IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN ROZNIAKOWSKI,  : Civ. No. 1:25-CV-2164
          :
  Plaintiff,     :
          :
   v.      : (Chief Magistrate Judge Bloom)
          :
DR. JACQUELINE HOWARD, et al., :
          :
  Defendants.   :

## MEMORANDUM OPINION

I. Statement of Facts and of the Case

This case comes before us for consideration of two motions to dismiss, filed by two groups of defendants: one from Kimberly Ardery, Bradley M. Booher, Laurel Harry, and Morris Houser ("the Commonwealth defendants") and another by Dr. Jacqueline Howard, Nicolas Rause, Tiffany Sottile, and Taylor Talasky ("the medical defendants").[1] The plaintiff, Stephen Rozniakowski, filed this action against the defendants asserting, *inter alia*, violations of his constitutional rights under the Eighth Amendment.[2] Rozniakowski has sued each defendant in their individual capacities for damages, and in

---

[1] Docs. 12-13.

[2] Doc. 1.

their official capacities for prospective declaratory and injunctive relief.[3]
Each group of defendants has moved to dismiss all claims against them, arguing, *inter alia*, that the complaint fails to state a claim.[4]

The complaint asserts injuries from a broken foot that Rozniakowski suffered while incarcerated at the State Correctional Institution at Benner Township, in Bellefonte, Pennsylvania.[5] Rozniakowski alleges he broke his foot getting out of bed on November 12, 2023, and first sought treatment on November 30.[6] He further alleges that he consulted with Defendant Talasky and requested a wheelchair (as a prior gunshot injury to his arm made crutches, in Rozniakowski's view, unsafe), but Talasky denied that request.[7] X-rays were performed on December 4 and 13, and on December 14, Dr. Howard signed off on x-rays that showed a fracture at the base of Rozniakowski's second metatarsal.[8]

---

[3] *Id.* ¶ 15.
[4] Docs. 12-13.
[5] Doc. 1 ¶¶ 6, 16.
[6] *Id.* ¶¶ 16-18.
[7] *Id.* ¶ 18.
[8] *Id.* ¶¶ 19, 21.

According to the complaint, nobody informed Rozniakowski of the break until December 23, when Talasky and Sottile met with Rozniakowski, confirmed the break and that Dr. Howard had done nothing to treat it, issued Rozniakowski a walking boot and a cane, and again denied him a wheelchair.[9] Rozniakowski saw an orthopedist on February 16, 2024, who casted his foot and opined that it should have been casted when the break was first confirmed.[10] In the following weeks, Rozniakowski's cast got wet in the prison showers and became moldy, causing burning and itching.[11] Rozniakowski met with Rause and requested an earlier orthopedic follow up because of the cast, but Rause denied the request.[12] Rozniakowski eventually returned to an orthopedist on March 22, reporting persistent pain and limited range of motion.[13] The orthopedist re-casted the foot and stated it should have been treated immediately.[14] At another follow-up appointment on April

---

[9] *Id.,* ¶¶ 22-24.
[10] *Id.* ¶ 25
[11] *Id.* ¶¶ 26-27.
[12] *Id.* ¶ 27.
[13] *Id.* ¶ 28.
[14] *Id.*

22, 2024, the orthopedist told Rozniakowski his foot had still not healed and he might never regain full mobility.[15]

Based on these averments, Rozniakowski brings claims pursuant to 42 U.S.C. § 1983 alleging claims under the Eighth Amendment, negligence and/or medical malpractice, and violations of Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").[16] As relief, he seeks compensatory and punitive damages, as well as injunctive relief in the form of certain medical treatments and accommodations while incarcerated.[17]

As we have explained, the defendants have now moved to dismiss the complaint, arguing, *inter alia*, that it fails to state a claim upon which relief can be granted.[18]    After consideration, the Commonwealth defendants' motion will be granted in part and denied in part, and the medical defendants' motion will be denied.

---

[15] *Id.* ¶ 29.
[16] Doc. 1 ¶¶ 39-53.
[17] *Id.* at 9.
[18] Docs. 12, 13.

## II.   Discussion

### A. Motion to Dismiss - Standard of Review

The defendants have filed motions to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted.[19]  Under federal pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."[20]

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true,[21] and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant."[22]   However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action."[23]

---

[19] Fed. R. Civ. P. 12(b)(6).
[20] Fed. R. Civ. P. 8(a)(2).
[21] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[22] *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).
[23] *Id.*; see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*[24]

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record.[25] A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents."[26] Additionally,

---

[24] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).
[25] *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).
[26] *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination.[27]  However, the court may not rely on any other part of the record when deciding a motion to dismiss.[28]

### B. The Commonwealth Defendants' Motion Will be Granted in Part and Denied in Part, and the Medical Defendants' Motion Will be Denied.

The complaint alleges four distinct violations.  Count I alleges a claim under Section 1983 that the medical defendants and Defendant Ardery violated Rozniakowski's Eighth Amendment rights by exhibiting deliberate indifference to his need for medical care.  Count II alleges that Defendants Booher, Harry, and Houser, are liable under the Eighth Amendment as supervisors.  Count III alleges negligence and medical malpractice by the medical defendants and Ardery.  Count IV alleges violations of the RA and Title II of the ADA by Defendants Booher, Harry, and Houser.

---

[27] *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).
[28] *Jordan*, 20 F.3d at 1261.

7

After consideration, we will dismiss the plaintiff's supervisory liability claim, as well as his request for compensatory damages under the RA.  However, the remainder of the plaintiff's claims survive the instant motions.

### 1. Count I – Deliberate Indifference

The first count alleges that Defendants Howard, Talasky, Sottile, Rause, and Ardery violated Rozniakowski's Eighth Amendment rights by exhibiting deliberate indifference to his need for medical care.  The plaintiff seeks compensatory and punitive damages from these defendants in their individual capacities.

Rozniakowski faces a high burden.  The Eighth Amendment protects inmates from "cruel and unusual punishment."[29]  Prison officials have a duty to provide inmates with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"[30]  To be liable for an Eighth Amendment violation, prison officials must have "a sufficiently culpable state of mind,"[31] which,

---

[29] U.S. Const. amend. VIII.

[30] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

[31] *Farmer*, 511 U.S. at 834.

in the prison context, is one of "'deliberate indifference' to inmate health and safety."[32]   This state of mind requirement is subjective, and the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[33]

In the medical context, an inmate alleging an Eighth Amendment violation must demonstrate that prison officials were deliberately indifferent to a serious medical need.[34]  Accordingly, an inmate asserting a claim of deliberate indifference must establish that he had a serious medical need, and that prison officials, by affirmative acts or omissions, were deliberately indifferent to that serious medical need.[35]  Deliberate indifference in this context can be shown by a failure to provide care, the delay of medical care for non-medical reasons, or denial of reasonable requests for treatment.[36]  However, mere disagreement over a course of treatment does not amount to deliberate indifference.[37]  Further, non-

---

[32] *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (citation omitted).
[33] *Farmer*, 511 U.S. at 837.
[34] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).
[35] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).
[36] *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).
[37] *James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007).

medical correctional staff cannot be deemed to be deliberately indifferent "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner."[38]

Ardery is the only Commonwealth defendant named in Count I. She argues that there are insufficient allegations to maintain this claim against her as her only participation in this matter was to deny one of Rozniakowski's grievances, which does not create liability. Rozniakowski does not dispute that grievance participation is itself insufficient for liability. Instead, he argues Ardery is liable because the grievance process put Ardery on notice of an ongoing constitutional violation (the denial of a wheelchair) being perpetuated by her subordinates, making her failure to intervene an acquiescence to that action.[39]

One theory of Section 1983 liability is that "a supervisor may be *personally* liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, *had knowledge of and acquiesced in [her] subordinates'*

---

[38] *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).
[39] Doc. 21 at 6.

*violations*."[40]  Resolving all inferences in Rozniakowski's favor, we find the complaint sufficiently alleges liability under this theory. Accordingly, the motion to dismiss Count I against Ardery will be denied.

This count can only proceed against the medical defendants with a showing that each defendant was subjectively aware of a substantial risk of harm to Rozniakowski.[41]  The defendants argue that such subjective awareness is not plead in the complaint, and therefore the claim should be dismissed.  For his part, the plaintiff argues that Dr. Howard's subjective awareness is shown by her signature on the x-ray showing his broken bone; Talasky's by his refusal of a wheelchair despite being aware of Rozniakowski's foot and arm injuries; Sottile's by his comment that waiting on treatment "a little longer won't hurt"; and Rause's by his refusal to send Rozniakowski for an earlier orthopedic consult despite his deteriorating cast and associated symptoms.[42]  We believe these allegations are sufficient at this stage to support the plaintiff's claim that these defendants were deliberately indifferent to a serious medical need.

---

[40] *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004) (emphases added).
[41] *Farmer*, 511 U.S. at 837.
[42] Doc. 22 at 6-8.

Further, Rozniakowski also alleges that an orthopedic specialist stated that Rozniakowski's foot should have been casted immediately.[43] In the context of a medical deliberate indifference claim, "the judgment of prison authorities will be presumed valid unless it is shown to be such a *substantial departure from accepted professional judgment, practice or standards* as to demonstrate that the person responsible actually did not base the decision on such judgment."[44] Here, Rozniakowski has alleged that these defendants' care, or lack thereof, departed from accepted professional judgment since they declined to treat his injury in a more immediate fashion. This is sufficient at this stage for this claim to proceed. Accordingly, the medical defendants' motion to dismiss this claim will be denied.

### 2. Count II – Supervisory Liability

Rozniakowski brings Count II against three of the Commonwealth defendants, Booher, Harry, and Houser, alleging supervisory liability under theories of "policy or custom" and "failure to train."[45]

---

[43] Doc. 1 ¶¶25, 28.

[44] *White v. Napolean*, 897 F.2d 103, 113 (3d Cir. 1990) (emphasis added).

[45] Doc. 1 ¶¶ 42-43.

12

The Third Circuit has established that there are two ways to plead a "supervisory liability" claim. The first makes a supervisor liable where they "established and maintained a policy, practice or custom which directly caused the constitutional harm," and the other finds liability where a supervisor "participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations."[46] Under either theory, a plaintiff must satisfy five elements:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.[47]

As for a "failure to train" allegation, the Court of Appeals has held that a claim of supervisory liability for a failure to train is "considered a subcategory of policy or practice liability."[48] The Court explained that

---

[46] *Santiago v. Warminster Tp.*, 629 F.3d 121, 129 n. 5 (3d Cir. 2010) (cleaned up).

[47] *Brown v. Muhlenberg Tp.*, 269 F.3d 205, 216 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

[48] *Barkes v. First Correctional Medical, Inc.,* 766 F.3d 307, 316 (3d Cir. 2014) (rev'd on other grounds).

"the standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve [.]"[49]  Therefore, to impose liability, a plaintiff must show "that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact [,]"[50] and for a failure to train, a plaintiff must also show "the deficiency in training actually caused"[51] the constitutional violation.

The Commonwealth defendants argue that Rozniakowski failed to allege factual averments to support either theory of supervisory liability. We agree.  Rozniakowski states flatly that his injuries are the result of policies or customs to allow diagnostic "sign-offs" without informing the patient or initiating treatment, downgrade urgent referrals to "routine", and deny wheelchair accommodations where crutches were unsafe, as well as from a failure to train staff to ensure timely orthopedic care.[52] But these "policies" are just events that allegedly occurred in this case— it does not follow that they were necessarily a result of custom or policy,

---

[49] *Sample*, 885 F.2d at 1118.
[50] *Carter v. City of Phila.,* 181 F.3d 339, 357 (3d Cir.1999) (cleaned up).
[51] *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 391 (1989).
[52] Doc. 1 ¶43(a)-(d).

or that the defendants here have supervisory involvement in any of the alleged policies.[53]  All five of the elements cited above are lacking in this complaint.    Rozniakowski presents only bare legal conclusions, insufficient to state a claim.[54]  Accordingly, we will dismiss Count II.

### 3. Count III – Negligence

The medical defendants argue, and Rozniakowski tacitly concurs, that his negligence claim cannot proceed without a certificate of merit as required by Pennsylvania Rule of Civil Procedure 1042.3.  We disagree. While this rule previously applied in federal litigation,[55] the Court of Appeals found that the recent Supreme Court case *Berk v. Choy* abrogated that precedent.[56]  Therefore, Rule 1042.3, which is functionally

---

[53] Even assuming *arguendo* that these alleged injuries were the result of a policy, Rozniakowski has not alleged that these supervisors, who are prison officials, were supervisors of the medical professionals alleged to have executed those policies.

[54] *Jordan*, 20 F.3d at 1261; *see also Iqbal*, 556 U.S. at 678.

[55] *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 264-65 (3d Cir, 2011) (concluding the *Erie* doctrine applied and finding Rule 1042.3 to be substantive law and therefore applicable in federal court).

[56] *DiFraia v. Ransom*, 171 F. 4th 622, 633 (3d Cir. 2026) (holding that *Berk* supersedes *Liggon-Redding*); *see also Berk v. Choy*, 146 S. Ct. 546, 554-57 (2026) (holding that Delaware's law requiring a plaintiff present an "affidavit of merit" to bring a medical malpractice action conflicts with Rule 8 of the Federal Rules of Civil Procedure and so does not apply in federal court).

identical to the Delaware statute the *Berk* Court found inapplicable in federal litigation, does not apply here.

This claim was also brought against one Commonwealth defendant, Ardery. She argues that Rozniakowski has failed to plead essential elements of negligence, including a duty owed to the plaintiff and a breach of that duty. Rozniakowski's references to the elements of negligence are relatively threadbare.[57] That said, resolving inferences in his favor, we conclude there is little question that the defendants here owed Rozniakowski a duty of care under the circumstances, and that he has alleged facts which, if believed, show a breach of that duty and injuries proximately caused by the breach. Accordingly, we will deny the motions to dismiss Count III.

### 4. Count IV – ADA and RA

Rozniakowski alleges violations of the ADA and RA by Booher, Harry, and Houser. In response, those defendants argue that Rozniakowski fails to state a claim because he has alleged inadequate treatment, not exclusion due to disability. They also argue that even if

---

[57] *See* Doc. 1 ¶¶ 45-47.

this court construes the claim as a Title II violation, all three essential elements of such a claim are absent here.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[58]  To state a claim under Title II, a plaintiff must show (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of services or programs; and (3) that the exclusion or denial was because of his disability.[59]

Individuals cannot be personally liable under Title II or the RA.[60] A Title II claim made against an individual in their official capacity is analogous to a claim against the state itself, and an RA claim against an individual in their official capacity is tantamount to bringing a claim against the state agencies that employ those officials.[61]  A claim under

---

[58] 42 U.S.C. § 12132.

[59] *Durham v. Kelly*, 82 F.4th 217, 225 (3d Cir. 2023).

[60] *Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 405-06 (M.D. Pa. 2020).

[61] *Brown v. Clemens*, Civ. No. 3:22-CV-1067, 2025 WL 2422615, at *8 (M.D. Pa. Aug. 21, 2015).

17

Title II or the RA may result in compensatory, but not punitive, damages.[62] However, compensatory damages under either act require a plaintiff to show "intentional discrimination under a deliberate indifference standard [.]"[63]

We consider this claim as alleging only official capacity liability against these defendants. Rozniakowski argues that an inmate request for mobility-related accommodation can support a claim under the ADA and the RA. We agree. In *Durham v. Kelly*, the Court of Appeals held that a plaintiff's diagnosis of lumbar stenosis and prescription for a cane were sufficient to find him a qualified individual with a disability.[64] The Court explained that one of the statutory definitions of disability is "a physical impairment that substantially limits one or more of the major life activities. A physical impairment is a 'physiological disorder or condition, . . . or anatomical loss affecting one or more body systems [,]' and 'major life activities' include walking and standing."[65] The same logic applies here, where Rozniakowski was diagnosed with a broken foot and

---

[62] *Id.*

[63] *Furgess v. PA Dep't of Corrections*, 993 F.3d 285, 289 (3d Cir. 2019).

[64] *Durham*, 82 F.4th at 225.

[65] *Id.* (cleaned up).

18

was prescribed crutches.  That is sufficient at this stage to allege that Rozniakowski was a qualified individual with a disability.

Rozniakowski also must allege he was excluded from participation in, or denied the benefits of, a public entity's services, programs, or activities.  Again, we look to *Durham*, where the Third Circuit found that the provision of showers inside of a prison qualified as a service, and that because that plaintiff had alleged a denial of "services, programs, or activities," he had alleged enough to satisfy this element.[66]  Rozniakowski argues that the denial of a wheelchair meant he could not "safely ambulate" and therefore "plausibly alleges loss of access to the ordinary incidents of confinement."[67]  Resolving all inferences in Rozniakowski's favor, we think this is sufficient to avoid dismissal.

Rozniakowski must also plead facts showing that the denial of services was because of his disability.  Because "[r]efusing to make reasonable accommodations is tantamount to denying access,"[68] and the complaint alleges that Rozniakowski's request for a wheelchair was refused, this element is satisfied, both under the "but-for" causation

---

[66] *Durham*, 82 F.4th at 225.
[67] Doc. 21 at 9.
[68] *See Durham,* 82 F.4th at 226.

19

standard that applies under the ADA, and the "sole cause" standard of the RA.[69]

Accordingly, we conclude Count IV generally survives the instant motion to dismiss. However, as part of this claim, Rozniakowski seeks compensatory damages under the RA.[70] As explained, compensatory damages are only available under the RA if there is a showing of intentional discrimination under a deliberate indifference standard. While Rozniakowski claims that this standard is met in his prayer for relief, he fails to allege any fact that would support such a finding. We therefore conclude that the claim for compensatory damages under the RA must be dismissed.

### 5. Eleventh Amendment Immunity

Finally, Ardery argues that she is entitled to immunity from Rozinakowski's claims pursuant to the Eleventh Amendment. We disagree. As to the Section 1983 claims, government officials sued in their individual capacity are generally not immune from suit.[71] Claims

---

[69] *Id.*

[70] Doc. 1 at 9.

[71] *See Hafner v. Melo*, 502 U.S. 21, 30-31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983.")

against a government official in her official capacity are also not immune from suit, though such claims are limited to injunctive relief.[72]   We conclude Ardery is not immune from Count I in either capacity.

As to the state-law negligence claim, Pennsylvania law is clear that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."[73]  Pennsylvania law has codified ten such waivers.[74]  One of those waivers is designed to remove immunity for "health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse, or related health care personnel."[75]  We agree with other courts that have found that a Corrections Health Care Coordinator ("CHCA") such as Ardery *may* be subject to this specific waiver, but that this determination depends on the specific nature of her work.[76]  In the

---

[72] *See Ex Parte Young,* 209 U.S. 123 (1908)

[73] 1 Pa. Cons. Stat. § 2310.

[74] 42 Pa. Cons. Stat. § 8522(b)(1)-(10).

[75] 42 Pa. Cons. Stat. § 8522(b)(2).

[76] *See e.g., Brown v. State Correctional Institution-Albion,* Civ. No. 1:22-CV-277, 2023 WL 11645842 at *8 (W.D. Pa. 2023) (holding that where the CHCA's functions "include providing or directing medical services"

21

Third Circuit, sovereign immunity is an affirmative defense and so must be plead and demonstrated by the defendant.[77] Because Ardery has not argued anything about the nature of her work, we presume the waiver applies here and conclude Ardery has not shown she is entitled to immunity from Count III.

As to Ardery's claim of immunity from the RA, we concur with the plaintiff that this immunity was waived as a condition of Pennsylvania accepting federal funding.[78] Therefore, the claim of Eleventh Amendment immunity for Ardery with regards to Count IV is denied.

In sum, we will deny Ardery's motion to dismiss on the basis of sovereign immunity.

---

they are not immune, but "where the duties of a CHCA are entirely administrative, she is outside the medical-profession exception and retains sovereign immunity.")

[77] *See e.g. Com. Of Pa., Dept. of Environmental Resources v. U.S. Postal Service*, 13 F.3d 62, 63 (3d Cir. 1993) (referring to "the affirmative defense of sovereign immunity.").

[78] 42 U.S.C. § 2000d-7; *see also Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 171-72 (3d Cir. 2002) (explaining the operation of this waiver and identifying the Pennsylvania Department of Corrections as an entity that accepts federal funds and so has waived Eleventh Amendment immunity).

## III.    Conclusion

For the foregoing reasons, the medical defendants' motion to dismiss will be DENIED, and the Commonwealth defendants' motion to dismiss will be GRANTED IN PART and DENIED IN PART as follows:.

1. The motion will be GRANTED as to Count II, and to the compensatory damages claim associated with Count IV; and

2. The motion will be DENIED as to Counts I, III, and the remainder of Count IV.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: May 27, 2026